IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>        Respondent/Plaintiff,<br><br>vs.<br><br>Jesus Rivera-Alvarado,<br><br>        Movant/Defendant. | No. CV-13-0509-PHX-GMS (MHB)<br><br>CR-09-1114-PHX-GMS<br><br>**REPORT AND RECOMMENDATION** |

TO THE HONORABLE G. MURRAY SNOW, UNITED STATES DISTRICT JUDGE:

     This matter comes before this Court upon consideration of a Motion to Vacate Sentence Pursuant to 28 U.S.C. §2255 (2255 motion), filed *pro se* on April 24, 2013, by Movant Jesus Rivera-Alvarado (CVDoc. 3.)[1] This Court granted Movant's Motion to Amend his 2255 on June 19, 2013 to supplement and correct some information in his 2255 motion (CVDocs. 6, 7). On October 4, 2014, Respondent filed its Response to Movant's 2255 motion and amendment, and on January 27, 2014, Movant filed his Reply. (CVDocs. 10, 13.)

**BACKGROUND**

A.    Trial.

     On June 3, 2010, a federal grand jury returned a second superceding indictment

---

[1] All documents filed in CV-13-00509 will be designated as "CVDoc" and all documents filed in the related criminal action, CR-09-1114 will be designated as "CRDoc."

charging Movant with conspiracy (count 1) and distribution and possession with the intent to distribute 50 grams or more of methamphetamine (count 2), in violation of 21 U.S.C. §846, §841(a)(1), and §841(b)(1)(A)(viii); possession of firearms in furtherance of a drug trafficking offense (count 5), in violation of 18 U.S.C. §924(c)(1)(A)(I); and felon in possession of a firearm (count 8) (based on a prior felony conviction for possession of cocaine out of Crawford County Circuit Court, Arkansas) in violation of 18 U.S.C. §922(g)(1) and §924(a)(2). (CRDoc. 120.) Three codefendants, Juan Carreno-Gutierrez (Carreno), Jose Luis Pita-Mota (Jose Luis), and Felix Pita-Mota (Felix), were also charged in counts 1 and 2, and with similar firearms counts. (Id.) A codefendant named in the superceding indictment, Benjamin Hernandez (Hernandez) had previously entered into a plea agreement. (CRDocs. 55, 116.)

Prior to trial the government alleged, pursuant to 21 U.S.C. §851, that Movant had previously been convicted of Possession of Cocaine and Possession of Drug Paraphernalia, both felonies, in the Circuit Court of Crawford County, Arkansas. (CRDoc. 99.) The government also filed a notice of its intent to introduce evidence of the Arkansas arrest and cocaine conviction, pursuant to Fed.R.Evid. 404(b), to prove knowledge, intent, and absence of mistake. (CRDoc. 66.) After Movant filed an objection to this 404(b) evidence, the Court held a hearing and overruled Movant's objection. (CRDocs. 91, 147.)

Trial before a jury began on June 22, 2010, after Movant and the remaining three codefendants rejected favorable plea agreements. (CRDocs. 151; 267, Reporter's Transcript (RT) at 36-38.) Movant rejected a one count plea to a firearm count with a stipulation to a five-year sentence. (Id.) Trial proceeded, and testimony was presented by agents with the Drug Enforcement Administration (DEA) and Immigration and Customs Enforcement (ICE) that, in August, 2009, they investigated Hernandez and Jose Luis at a house on West Granada street (Granada house) in Phoenix, Arizona. (CRDoc. 269, RT at 238-239.) On the morning of August 27, 2009, agents observed Felix's Honda leave and return to the Granada house, and saw Hernandez, driving an Altima registered to Esther Barrera-Diaz, arrive at the Granada house. (CRDocs. 270, RT at 521-23; 271, RT at 854.)

1   Before noon, DEA special agent Dan Moritz, and an identified confidential source
2   (CS) placed a recorded telephone call to Jose Luis. (CRDoc. 269, RT at 242.) They
3   negotiated a 25-pound methamphetamine deal, and Jose Luis indicated that he needed to
4   confer with his "buddy" before finalizing the details. (Id., RT at 247-48, 254-55.) In a
5   follow-up phone call, Jose Luis refused to allow agent Moritz or the CS to see all of the
6   methamphetamine up front, and insisted that the deal take place one pound at a time, with
7   payment for each. (Id., RT at 255-58, 260-62.) Agent Moritz and the CS requested a face-
8   to-face meeting and Jose Luis said that he would send Hernandez. (Id., RT at 263.)

9   Around noon, Hernandez was observed leaving the Granada house, alone in the
10  Altima, followed by Felix's Honda (driven by an unidentified person), and traveled west on
11  Granada. (CRDocs. 270, RT at 524; 271, RT at 854-56.) Minutes later, Hernandez arrived
12  at a Ranch Market parking lot where the CS was located. (CRDoc. 269, RT at 264, 240.)
13  Hernandez parked and got into the front passenger seat of the CS's vehicle. (Id., RT at 266.)
14  Agent Moritz joined them and they spoke for awhile about the deal, during which another
15  undercover agent showed Hernandez $200,000.00 in currency. (Id., RT at 269-72.) After
16  this, Hernandez left the meeting in the Altima. (CRDoc. 270, RT at 657.)

17  Between 12:45 and 1:41, surveillance agents observed the vehicles coming and going
18  from the Granada house, and saw Jose Luis meet with the occupant(s) of a new vehicle, a
19  white Honda, at the Granada house. (CRDocs. 271, RT at 858, 862; 269, RT at 423-26; 272,
20  RT at 973; 270, RT at 527.) Five to ten minutes after the white Honda departed, Felix's
21  Honda and the Altima arrived at the Granada house, but did not stop and left at 1:41 p.m.
22  (CRDocs. 270, RT at 622; 271, RT at 867-69.) One minute later, Felix drove his Honda back
23  to the Granada house and he and Movant got out of the car and went into the house.
24  (CRDocs. 270, RT at 528, 622; 271, RT at 867-69.) The Altima also passed by the Granada
25  house again, but did not stop and kept going. (CRDoc. 270, RT at 622.)

26  At 1:46 p.m., the Altima returned and parked at the Granada house. (CRDocs. 270,
27  RT at 593, 622; 271, RT at 879-80.) Carreno was driving the Altima and Hernandez was the
28  passenger. (CRDoc. 271, RT at 883.) When those two arrived, Movant came out of the

1 Granada house and walked back into it together with Hernandez and Carreno. (Id., RT at
2 884-85.) Movant, Hernandez, Carreno and Felix remained inside the house for
3 approximately five minutes. (CRDocs. 270, RT at 537; 271, RT at 885-87.)

4 The four men then left the Granada house in different pairings than when they had
5 arrived: Movant drove the Altima with Hernandez as the passenger. (CRDocs. 270, RT at
6 539-541; 272, RT at 887.) Movant pulled out into the street, stopped at another house, and
7 waited for the others. (CRDoc. 270, RT at 540-42, 622.) While they waited in the Altima,
8 Felix and Carreno exited the Granada house and got into Felix's Honda. (Id., RT at 542,
9 622.)

10 As he left the Granada house, Movant drove the Altima in a manner consistent with
11 doing a "heat run." (CRDoc. 270, RT at 623.) Heat runs are a common counter-surveillance
12 tactic for drug traffickers whereby they drive erratically – e.g., sudden changes in speed,
13 direction, or stops and starts – to determine whether they are being followed by law
14 enforcement or by other drug traffickers who may rob them. (CRDocs. 270, RT at 514-515;
15 271, RT at 839-40.) Drug traffickers in the Phoenix area are security conscious and fear both
16 being robbed by other criminals and arrested by law enforcement. (CRDoc. 271, RT at 834,
17 839.) Because of this fear, drug traffickers who are moving pound-quantities of
18 methamphetamine will be armed and will commonly use one vehicle as a delivery vehicle
19 and another vehicle to do counter-surveillance. (CRDoc. 271, RT at 838-39.)

20 About ten minutes after Movant left the Granada house, he drove the Altima to the
21 Ranch Market parking lot and pulled close to the CS vehicle. (CRDoc. 269, RT at 334-35.)
22 Movant parked "three to five yards" from the CS vehicle to let Hernandez out. (Id., RT at
23 369.) Hernandez had a plastic bag in his hands and got into the passenger side of the CS
24 vehicle. (Id., RT at 335.) Movant then drove the Altima slowly through the parking lot,
25 looked into parked cars, and parked with a direct line of sight on the CS vehicle. (Id., RT at
26 335-36.) Movant's behavior was consistent with counter-surveillance during the drug deal.
27 (Id., RT at 336-37.) Agents also observed Felix's Honda traveling through the parking lot.
28 (Id., RT at 427.)

After Hernandez got into the vehicle with the CS, agents arrested him along with the CS, and seized a plastic bag containing a green Tupperware container with 380.5 grams of pure (89.5%) methamphetamine and 63 grams of dimethyl sulfone. (CR Doc. 269, RT at 340-41; CRDoc. 271, RT at 793-96.) Agents arrested Movant from the driver's side of the Altima in the Ranch Market parking lot. (CRDoc. 269, RT at 382.) Movant had a loaded .357 caliber revolver in his waistband. (Id., RT at 384-88; CRDoc. 271, RT at 717.) Agents arrested Felix and Carreno and seized two loaded handguns from Felix's Honda in another part of the Ranch Market parking lot. (Id., RT at 401-03; 430-32, 437.)

Shortly after the arrests, law enforcement officers served a search warrant on the Granada house. (CRDoc. 271, RT at 893-94.) During the search they found a plastic tub containing apparent methamphetamine residue, dimethyl sulfone with trace amounts of methamphetamine, weapons parts, a .357 caliber handgun, a 9 mm handgun, counterfeit currency, a digital scale, and approximately 1,000 rounds of ammunition for various firearms. (CRDocs. 269, RT 446-48; 270, RT at 549, 671-72, 675; 271, RT at 700-01, 708, 749, 793-96, 799, 893-94.)

As to the noticed 404(b) evidence, the prosecutor called Arkansas State trooper Olen Craig to the stand to testify that in September, 2004, he stopped a vehicle that Felix was driving for a traffic violation. (CRDoc. 221, RT at 1-10.) Movant was a passenger in the vehicle. (Id.) Because a K9 alerted to the presence of illegal drugs in the vehicle, a search was conducted, and 15 pounds of cocaine and a Ruger 9 millimeter semiautomatic pistol were found concealed in the vehicle. (Id., RT at 10-15.) Subsequently, Movant was charged and convicted in the Circuit Court of Crawford County, Arkansas, 21st District, of felony possession of cocaine and possession of drug paraphernalia, and a certified copy of the judgment of conviction was admitted into evidence. (Id., RT at 15-18; Trial Exhibit 115.) The conviction documents were in the name of "Jesse Alvarado," with a date of birth of July 16, 1967. (Id.) Following trooper Craig's testimony, he was excused without objection from Movant. (Id., RT at 31-32.)

\\\

1  At the conclusion of the evidence, Movant's counsel moved for judgment of acquittal as to Counts 1, 2 and 5 of the indictment, arguing that the Government's evidence only showed Movant was "present at the Granada house," and that there was no evidence that Movant was aware of the drugs in Hernandez's possession, or of the drugs and firearms found in the Granada house. (CRDoc. 272, RT at 1024-25.) Movant's motion was denied. (Id., RT at 1026.) On June 30, 2010, Movant was convicted of all charges. (CRDoc. 166.)

B.  Sentencing and Appeal.

Prior to sentencing, Movant filed a Notice of Denial of Prior Conviction, (CRDoc. 206), and the Government responded that, to prove the prior conviction for sentence-enhancement purposes, it would submit the evidence admitted at trial of Movant's prior felony, and also rely on the fact that the jury convicted Movant of one count of felon in possession of a firearm. (CRDoc. 213.) The district court admitted the certified document of conviction over Movant's objection, and ordered further briefing from the Government on the issues of the court's consideration of the trial testimony. (CRDoc. 292, at 20-14.) At the continued sentencing, the court upheld Movant's objection in part, ruling that the hearsay testimony of trooper Craig was inadmissible to prove Movant's prior conviction to support an enhanced sentence, but held that the prior conviction was proven beyond a reasonable doubt by virtue of the conviction documents, "and the fact that the jury [] found [Movant] guilty of a felon in possession charge based on that offense." (CRDoc. 285, RT at 1-12, 17.) The Court then sentenced Movant to the mandatory minimum sentence of 25-years. (Id., RT at 26.) Movant appealed his sentence, and on April 19, 2012, the Ninth Circuit Court of Appeals affirmed his sentence in a Memorandum Opinion, finding that the trial court did not err in taking judicial notice of the jury verdict as part of the proof of Movant's prior conviction. (CRDoc. 316-1.)

\\\
\\\
\\\
\\\

C.     Movant's Claims.

As grounds for relief, in his 2255 motion, Movant asserts five claims of ineffective assistance of trial counsel, and one claim of insufficiency of the evidence.[2] (CVDocs. 3, 4, 6.) Respondent counters that grounds 4-6 are foreclosed and/or procedurally defaulted, and, alternatively fail on their merits, and that grounds 1-3 fail on their merits.

**STANDARD**

A federal prisoner may seek relief under §2255 if (1) his sentence was imposed in violation of the United States Constitution or the laws of the United States; (2) the sentencing court had no jurisdiction to impose the sentence on the prisoner; (3) the sentence imposed exceeded the maximum sentence authorized, or (4) the sentence is "otherwise subject to collateral attack." 28 U.S.C. § 2255(a). A 2255 petition is an "extraordinary remedy," however, and "will not be allowed to do service for an appeal." Bousley v. United States, 523 U.S. 614, 621 (1998) (citation omitted). If a prisoner could have raised a claim on direct appeal but did not do so, he has "procedurally defaulted" on that claim and cannot present it in a 2255 petition unless he shows (1) cause for failing to raise it on direct appeal and "actual prejudice" from that failure or (2) that he is "actually innocent." Id. at 622 (citations omitted).     A claim is exempt from the procedural default rule, however, if it cannot be presented without further factual development. Id. at 621. A claim of ineffective assistance of counsel may fall within this exemption. Masaro v. United States, 538 U.S. 500, 509 (2003).

A prisoner is not entitled to an evidentiary hearing on the claim, however, if "the motion and the files and records of the case conclusively show that [he] is entitled to no relief." 28 U.S.C. §2255(b). To earn the right to a hearing, a prisoner must "allege specific facts which, if true, would entitle him to relief." United States v. McMullen, 98 F.3d 1155, 1159 (9th Cir. 1996). A hearing is not required when credibility issues can be conclusively decided on the basis of documentary testimony and evidence in the record. Watts v. United

---

[2] Movant intersperses within these claims other miscellaneous grounds for relief.

- 7 -

1 States, 841 F.2d 275, 276 (9th Cir. 1988).  See also, Shah v. United States, 878 F.2d 1156, 1161 (9th Cir. 1989) (vague and conclusory allegations insufficient to warrant an evidentiary hearing).

The two-prong test for establishing ineffective assistance of counsel was established by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984).  In order to prevail on an ineffective assistance claim, a convicted defendant must show (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  See id. at 687-88.

Regarding the performance prong, a reviewing court engages a strong presumption that counsel rendered adequate assistance, and exercised reasonable professional judgment in making decisions.  See id. at 690.  "[A] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  Bonin v. Calderon, 59 F.3d 815, 833 (9th Cir. 1995) (quoting Strickland, 466 U.S. at 689).  Moreover, review of counsel's performance under Strickland is "extremely limited": "The test has nothing to do with what the best lawyers would have done.  Nor is the test even what most good lawyers would have done.  We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial."  Coleman v. Calderon, 150 F.3d 1105, 1113 (9th Cir.), judgment rev'd on other grounds, 525 U.S. 141 (1998).  Thus, a court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  Strickland, 466 U.S. at 690.

If the prisoner is able to satisfy the performance prong, he must also establish prejudice.  Strickland, at 691-92; see also Smith v. Robbins, 528 U.S. 259, 285 (2000) (burden is on petitioner to show prejudice).  To establish prejudice, a prisoner must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.  A "reasonable

1  probability" is "a probability sufficient to undermine confidence in the outcome." Id.  A
2  court need not determine whether counsel's performance was deficient before examining
3  whether prejudice resulted from the alleged deficiencies. See Robbins, 528 U.S. at 286 n.14.
4  "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient
5  prejudice, which we expect will often be so, that course should be followed." Id. (quoting
6  Strickland, 466 U.S. at 697).

**CLAIMS**

A.   Grounds 4-6.

In Ground 4, Movant claims that his trial counsel was ineffective because he did not object sufficiently to the admission of his prior conviction to support an enhanced sentence. (CVDocs. 3, at 5; 4, at 14.)  As discussed above, Movant's counsel objected to the consideration of this evidence, and Movant's appellate counsel raised the issue on appeal. The Ninth Circuit rejected the argument and found that the trial court did not err in overruling trial counsel's objection and admitting the evidence.  Movant is therefore precluded from raising the issue again in collateral proceedings, even though styled as an ineffective assistance of counsel claim.  "The law in this circuit is clear that when a matter has been decided adversely on appeal from a conviction, it cannot be litigated again on a 2255 motion." Odom v. United States, 455 F.2d 159, 160 (9th Cir. 1972).  Under Strickland, even if Movant could somehow demonstrate that counsel was ineffective, he does not show prejudice, as the Ninth Circuit found  no error in the trial court's decision.

Movant also asserts that the trial court erred in admitting evidence of his prior conviction pursuant to Fed.R.Evid. 404(b). (CVDoc. 6, at 3-5.) Movant did not raise this issue on appeal, and therefore has procedurally defaulted this claim. In addition, Movant's claim is without merit.  Movant fails to explain how his conviction was not admissible for the purposes outlined in Fed.R.Evid. 404(b)(2).  The trial found the facts of the prior arrest and conviction "[met] the four part test for admissibility set out in Ninth Circuit law." (CRDoc. 147.)   The court further found, that although some prejudice may result from the admission of this evidence, "that [resulting] prejudice does not substantially outweigh the

- 9 -

1  probative value of the evidence as it relates to the knowledge, intent and lack of the mistake
2  of the defendants." (Id.) The trial court also instructed the jury, during the testimony of
3  Arkansas trooper Craig, that the testimony was "being admitted only for the limited purpose
4  of being considered by you on the question of the defendants' intent, plan, knowledge, and
5  absence of mistake, and for no other purpose." (CRDoc. 221, RT at 14.) In addition, Felix
6  raised on appeal the issue of the admissibility of this 404(b) evidence, and the Ninth Circuit
7  found that the court did not err. (CRDoc. 318-1, at 2.)

8  Movant furthermore infers that trial counsel should have prepared better for
9  sentencing and that his 25-year sentence was affected by the United States Sentencing
10 Guidelines. (CVDoc. 4, at 14-15.) Movant received the statutory minimum sentence for his
11 offenses of conviction: 20-years on Counts One and Two, 21 U.S.C. §841(b)(1)(A) and
12 §851, and a 5-year consecutive minimum on Count Five, 18 U.S.C. §924(c)(1)(A)(I).
13 Movant does not provide any basis to find the mandatory minimums inapplicable to his case,
14 such that additional guideline research or sentencing preparation could have affected his
15 sentence. Thus, to the extent Movant could demonstrate that his counsel was ineffective in
16 this regard, he can not show prejudice. The claims presented by Movant in Ground 4 of his
17 2255 motion should therefore be precluded as having been litigated on appeal, denied as
18 procedurally defaulted, or otherwise denied on the merits.

19 In Ground 5, Movant claims that his trial counsel was ineffective in "allowing the
20 prosecutor to charge him with 924 (c)," because the evidence was insufficient to sustain a
21 conviction on that count. (CVDocs. 3, at 7; 4, at 20.) In Ground 6, Movant claims that the
22 evidence presented at trial was insufficient to convict him of the conspiracy charge. (Id., at
23 6; 23.) At the conclusion of the prosecutor's presentation of evidence, Movant's trial counsel
24 moved for judgment of acquittal based upon the insufficiency of the evidence. (CRDoc. 272,
25 RT at 1024-25.) The trial court denied the motion after hearing argument, finding that there
26 was sufficient evidence to proceed. (Id., RT at 1025-26.) Movant did not raise a claim of
27 insufficiency of the evidence on direct appeal. Thus, Movant's claim of insufficient evidence
28 is procedurally defaulted, and alternatively denied on the merits, as the evidence was

1 sufficient to support a conviction on all counts.[3]

2 Movant's claim in Ground 5 that his trial counsel "allowed" him to be convicted of
3 the §924(c) count is without merit, as Movant's trial counsel argued for judgment of acquittal
4 on Count 5, asserting that, although the prosecutor has shown that Movant was present at the
5 scene and had a gun in his possession, there was no proof that Movant "used that gun to
6 further the drug sale." (CRDoc. 272, RT at 1025.) The prosecutor responded that there was
7 sufficient evidence based upon "the close proximity of the weapon in [Movant]'s waistband
8 to the drugs during the trip there and while he was standing guard." (Id., RT at 1026.) The
9 trial court agreed and denied the request. Movant does not establish how trial counsel was
10 ineffective in this regard, or what trial counsel should have done differently. Even if Movant
11 could establish ineffective assistance of counsel, he does not establish prejudice, as there was
12 more than sufficient evidence presented at trial to support Movant's conviction on Count 5.
13 Thus, Ground 5 of Movant's 225 motion should be denied on the merits.

14 B.     Grounds 1-3.

15 In Ground 1, Movant divides his general claim of ineffective assistance of counsel
16 into several sub claims: (1) trail counsel failed to object to "perjured testimony" and to the
17 admission of illegal drugs into evidence "that did not belong to [Movant]," (2) trial counsel
18 did not object to prosecutor's improper closing argument, (3) trial counsel allowed the jury
19 to retire with the "inaccurate impression" that Movant was the drug supplier or knew about
20 the conspiracy, and (4) trial counsel failed to impeach witnesses with prior inconsistent
21 statements. (CVDoc. 4, at 3.) He also claims that the prosecutor "did not disclose
22 exculpatory evidence," that he was "framed," and that appellate counsel was ineffective by

---

[3]Respondent asserts that "[i]t is worth noting that co-defendant Felix [], who did not have a gun in his waistband and was in a different car than the one used to transport the methamphetamine to the Ranch Market, raised insufficient evidence as an issue on direct review." (CVDoc. 10, at 13.) The Ninth Circuit rejected the claim, finding that "[v]iewed in the light most favorable to the prosecution, we easily conclude that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (CRDoc. 318-1.)

- 11 -

1 not raising these issues on appeal as plain error. (Id., at 3-4.) With respect to Movant's first
2 3 sub claims, he does assert any facts in support of his general averments. As to his fourth
3 sub claim, Movant appears to be claiming that a witness placed him close to Hernandez at
4 the time of his arrest, when he was "25 yards" away, and therefore not a part of the drug
5 transaction. (CVDoc. 4, at 5.) Movant later claims that he was 100-yards away. (CVDoc.
6 6, at 2.) The witness did not, however, testify that Movant was 25-yards away, but testified
7 that Movant was "near the confidential informant's vehicle." (CRDoc. 269, RT at 277.) A
8 law enforcement agent testified that he was 75-100 yards away from Movant's vehicle, and
9 that Movant parked two to three spaces away from the agent after dropping off Hernandez.
10 (Id., RT at 336, 338.) Thus, Movant fails to establish that trial counsel was ineffective by not
11 objecting to the witnesses testimony, or demonstrate that, even if counsel had objected, the
12 result of the proceedings would have been different.[4]

13 Movant also does not identify the exculpatory evidence that the prosecutor allegedly
14 did not disclose, or how it was that he was "framed." Furthermore, as Movant does not
15 establish a basis for a finding of ineffective assistance of counsel, or that any of his
16 underlying claims have merit, Movant's claim of ineffective assistance of appellate counsel
17 must also fail. Thus, Ground 1 of Movant's 2255 motion should be denied on the merits.

18 In Ground 2, Movant divides his general claim of ineffective assistance of counsel
19 claim into eight sub claims: (1) trial counsel did not dedicate sufficient time to Movant's
20 case, (2) trial counsel failed to hire an investigator or conduct any pre-trial investigations, (3)
21 trial counsel failed to interview the majority of witnesses listed in police reports, (4) trial
22 counsel failed to file a motion to the identity of the confidential informant, (5) trial counsel
23 failed to file suppression motions, (6) trial counsel failed to object to the prosecutor leading

---

[4] The agent also testified that after Movant dropped his passenger Hernandez off beside the CS vehicle, Movant "continued around the parking lot in a kind of slow and deliberate manner, driving around the parking lot looking into vehicles, and eventually parked near the [undercover] vehicle, which was some – distance from the CS vehicle". (CRDoc. 269, RT at 335.) Thus, Movant's distance from the CS vehicle at the time of the transaction was not the only fact tying Movant to the drug transaction.

- 12 -

1 the witnesses, (7) counsel failed to file a motion to conduct a pretrial line-up, and (8) counsel
2 failed when he agreed to stipulate without Movant's consent.   (CVDoc. 4, at 11-12.)

3 Beyond listing these sub claims, Movant asserts no facts in support.   He does not
4 identify what pretrial investigation his trial counsel did not do, but should have done.
5 Although Movant asserts his counsel should have filed a motion to identify the informant,
6 the informant's identity was in fact disclosed prior to trial.  (CRDoc. 267, RT at 3-4.)
7 Identification of Movant was also not an issue at trial, as Movant was arrested by law
8 enforcement at the scene and had a firearm in his waistband.  In addition, Movant does not
9 identify what stipulation his counsel entered into without his consent, or what evidence at
10 trial should have been suppressed.  Even if Movant could demonstrate his counsel's
11 ineffectiveness in any or all of these regards, he does not show prejudice.  As such, Ground
12 2 of Movant's 2255 motion should be denied on the merits.

13 In Ground 3, Movant claims that his trial counsel was ineffective for not having
14 moved to sever his trial from the trial of his co-defendants, pursuant to Fed.R.Crim.P. 14 and
15 8, and for not objecting to the trial court's failure to give proper limiting instructions to the
16 jury and for not requesting the same. (CVDoc. 4, at 12.)  Movant claims that the evidence
17 against him was "weak," and that he was found guilty because of "the evidence spillover"
18 from his co-defendants, and that they should have been tried separately.  (Id.)  To warrant
19 a severance, a movant "must demonstrate that the joint trial impinged on a fundamental trial
20 right or compromised the fairness of the proceedings in a tangible way."  United States v.
21 Hanley, 190 F.3d 1017, 1027 (9th Cir. 1999) (superceded by statute on other grounds);
22 United States v. Johnson, 297 F.3d 845, 855 (9th Cir. 2002) (a defendant must show that the
23 failure to sever prevented a fair trial).

24 Movant does not demonstrate how the joint trial affected a fundamental trial right or
25 rendered his trial unfair. All of the defendants were charged with conspiracy, and the bulk
26 of evidence presented at trial was relevant and necessary to establish the conspiracy.  In
27 addition, the trial court instructed the jury to decide the case of each defendant "on each
28 crime charged against that defendant separately," that the jurors' verdict "on any count as to

1 any defendant should not control your verdict on any other count or as to any other
2 defendant," and that the jury should consider evidence about other acts of the defendant
3 "only as they relate to each charge against each defendant." (CRDoc. 289; RT at 1303.) To
4 the extent Movant asserts that the felon in possession charge should have been severed from
5 the other charged offenses for trial, Movant can not demonstrate prejudice, as the same
6 evidence was properly admitted for 404(b) purposes. See, supra. As such, Ground 3 of
7 Movant's 2255 motion should be denied on the merits.

8 In Movant's Reply to Respondents' Answer, he suggests that his ability to fully
9 respond to Respondents' arguments was hampered by his limited access to legal materials
10 and "legal Court documents." (CVDoc. 13, at 4.) Movant does not identify what materials
11 he needed to adequately respond. Furthermore, in his 21-page Reply, Movant cites numerous
12 cases, refers to trial exhibits, and attaches a newspaper article and pages from trial transcripts
13 as exhibits. Movant does not show that his claimed lack of access has resulted in his inability
14 to respond to Respondents' Answer. In fact, all of Movant's *pro se* pleadings reflect
15 adequate access to, and use of legal materials and court documents.

## CONCLUSION

17 Movant has not alleged specific facts, if true, that would entitle him to relief, and thus
18 he has not earned the right to an evidentiary hearing. The motion and the files and records
19 of Movant's case "conclusively show that [Movant] is entitled to no relief." 28 U.S.C.
20 §2255. Movant's request to vacate, set aside or correct his sentence should therefore be
21 denied.

22 **IT IS THEREFORE RECOMMENDED** that Movant's Motion Under 28 U.S.C.
23 § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody (CVDoc.
24 3) be **DENIED**.

25 **IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave
26 to proceed *in forma pauperis* on appeal be **DENIED** because jurists of reason would not find
27 it debatable whether the motion states a valid claim of the denial of a constitutional right and
28 whether the district court was correct in its procedural ruling. Slack v. McDaniel, 529 U.S. 473,

484 (2000).

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have 14 days from the date of service of a copy of this recommendation within which to file specific written objections with the court. See 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(b) and 72. Thereafter, the parties have 14 days within which to file a response to the objections. Failure to timely file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order of judgment entered pursuant to the Magistrate Judge's recommendation. See Fed.R.Civ.P. 72.

DATED this 18th day of June, 2014.

_Michelle H. Burns_
Michelle H. Burns
United States Magistrate Judge